15041

SIMS v. CLAYTON *ET AL.*

(7 S. E. (2d), 724)

*Mr. Esten C. Taylor,* for appellant,

*Messrs. D. W. Galloway* and *C. E. Strange,* for respondent,

March 18, 1940.

The opinion of the Court was delivered by Mr. Justice Carter.

Plaintiff brought this action for the purpose of having the Court construe a deed, dated November 12, 1917, from Mrs. L. A. Sims to Nathan Augustus Sims and Nancy Agnes Sims (now Agnes Sims Clayton), and also for the purpose of having partitioned in kind the real estate described in the deed and owned in common by the two grantees. The complaint alleges that Nathan A. Sims "owns a fee simple conditional title to his moiety of said property."

The plaintiff, Nathan A. Sims, and the defendant, Mrs. Nancy Sims Clayton, are twins, have passed their twenty-first birthday and both are now married. Nathan A. Sims has a minor child, Harriet Ann Sims but the other grantee, Mrs. Nancy Sims Clayton, has no child. Esten C. Taylor

was appointed guardian ad litem for Harriet Ann Sims and for the unborn issue of Nathan A. Sims: Hugh Clayton was appointed guardian ad litem for the unborn issue of Nancy Sims Clayton. Both guardians ad litem have filed answers and made personal appearances. L. P. Sims, Sr., and Mrs. Blanche Sims Harris, who were made parties defendant for the reason that they are the only heirs and distributees at law of Mrs. L. A. Sims, have asnwered.

The preamble to the deed is as follows: "Whereas, I have previously made provisions for certain of my grandchildren, and their descendants by conveying to them certain lots of property given me by my husband to the end that the property may remain in the Sims family, and among those bearing the name, in perpetuity so long as the law may permit."

The granting clause reads, in part: " * * *  to be held and enjoyed by them, during the full term of their natural lives, and at the death of either without heirs of the body surviving them to the survivor of them, but upon the death of either or both with heirs of the body surviving, to the heirs of their body or bodies in fee simple forever." The consideration was love and affection and one dollar.

The habendum clause contains this provision: "To Have And To. Hold * * * jointly share and share alike for the full term of their natural life or lives, and at the death of either without issue of the body the survivor to take the premises for his or her enjoyment during the term of his or her life, and at the death of the survivor to the heirs of their body or the heirs of the body of either leaving heirs, their heirs and assigns forever, subject to the use and enjoyment of the premises by the grantor, Mr. L. A. Sims, during the term of her natural life."

The matter was referred to the Master for Spartanburg County, who held two references. He reported that Nathan Sims and Nancy Sims Clayton have agreed upon a plan for a partition in kind of the property in question, and recommended that commissioners be appointed to execute this plan; that there is due in unpaid taxes in excess of $980.00

on this real estate, and, in its present state, is incapable of yielding sufficient income to pay current taxes; that it has fallen into a hazardous state of disrepair and dangerous to its tenants, who will vacate it unless it is repaired; and that the grantees cannot agree upon a plan for improvement or of providing funds for repair. The Master found that "under the deed, Nathan Sims and Nancy Sims Clayton have fee conditional estates. Lawful issue having been born to Nathan, the reversion of his estate is therefore barred, and he can alienate his share of the property any time during his life. Upon birth of lawful issue to Nancy, she will then have the same right of alienation." By his decree dated August 29, 1939, Judge Sease confirmed the Master's report. The guardian ad litem for Harriet Ann Sims now appeals to this Court.

The appellant states that the "sole question involved on this appeal is whether the Circuit Court was in error in holding that the grantor in the deed construed herein used the words 'to the heirs of their body' occurring in the granting and habendum clauses, in their strict legal sense and not in the nontechnical sense of 'children' or 'grandchildren,'" contending that an examination of the entire deed shows clearly and unmistakably that the grantor did not intend to use the words "heirs of their body" in their established legal sense, which intention is manifested, first, by the declaration the grantor in the preamble "of her intention that the property conveyed 'may remain in the Sims family, and among those bearing the name in perpetuity so long as the law may permit,' and, secondly by the limitation in the granting clause 'to the heirs of their body or bodies in fee simple forever', and in the habendum 'at the death of the survivor to the heirs of the body or the heirs of the body of either leaving heirs, their heirs and assigns forever.'"

We find in *Antley v. Antley,* 132 S. C., 306, 308, 128 S. E., 31, 32, that "one of the first canons of construction is that the intention of the grantor must be ascertained and effectuated if no settled rule of law be

contravened." With this in mind, we will now seek to discover whether there is such an intention disclosed in the deed as will bar the operation of the rule in Shelley's case.

To begin with, our careful reading and study of the ■ preamble leads us to conclude that it has no bearing on, or does not explain in any way, the estate conveyed in the granting and habendum clauses. The preamble here shows on its face that the grantor is definitely referring to provisions previously made in other deeds for grandchildren other than the grantees in the present deed. In other words, it is clear that the grantor is merely saying that she had previously conveyed certain lots of property to certain of her grandchildren other than the grantees here, and that the expression "to the end that the property may remain in the Sims family, and among those bearing the name in perpetuity so long as the law permits," has reference to the property so previously conveyed in other deeds.

We come now to an examination of the granting and ■ habendum clauses. In granting clause we find the superadded words "in fee simple forever." The case of Clark v. Neves, 76 S. C., 484, 57 S. E., 614, 12 L. R. A., (N. S.), 298, casts much light upon our consideration of the effect of these superadded words. In that case the language of the deed was "To have and to hold * * * to said W. A. Clark, in trust for * * * Eleanor B. Clark * * * for and during her natural life, and at her death the said premises are to belong of right in fee simple to the lineal heirs of the said Eleanor B. Clark forever." The appellants there contended "that the limitation 'lineal heirs' is so qualified by the superadded words 'in fee simple' 'forever' as not to denote an indefinite line of descent, but a new stock of inheritance." The Court held that Eleanor B. Clark took a fee conditional. We quote from that case:

"This being a deed instead of a will, and an executed trust instead of an executory trust, the construction must be governed by the strict rules of the common law. *McMichael v. McMichael*, 51 S. C. (555), 557, 29 S. E., 403. The ap-

parent intent can only be given such effect as accords with the established rules governing common-law conveyances. The words 'lineal heirs,' like 'heirs of the body,' mean all lineal descendants to the remotest posterity, and are words of inheritance, and not of purchase, unless the instrument clearly shows they were used in a restricted sense to denote 'children.' *Duckett v. Butler,* 67 S. C., 130, 45 S. E., 137; *Holman v. Wesner,* 67 S. C., 307, 45 S. E., 206. The words at her death 'the said premises are to belong of right in fee simple to the lineal heirs of the said Eleanor B. Clark forever' cannot have such restricting effect, for that would contradict the apparent intent to provide for other of the lineal descendants not children   *   *   *.

"Under the rule in *Shelley's case,* if an estate of inheritance be given to the ancestor, and a remainder be thereon limited to his heirs, or to the heirs of his body, such remainder is immediately executed in possession in the ancestor, so that the ancestor takes the whole estate in fee simple if the limitation be to heirs general, and in fee conditional if the limitation be to the heirs of the body. *Austin v. Payne,* 8 Rich. Eq. (9), 10; *Williams v. Foster,* 3 Hill, 193. When, therefore, the deed is construed according to the ordinary rules of construction, and it is ascertained that the words 'heirs' or 'heirs of the body' are used in their technical sense as describing an entire class or denomination of heirs, the rule in *Shelley's case,* as stated above, applies. In using the words 'lineal heirs', the grantor in this case evidently intended the limitation to be not only to children, but to grandchildren, great grandchildren, and so on down the line of descent indefinitely. There is nothing in the deed to restrict the meaning of 'lineal heirs' to children alone.

"The case of *Danner v. Trescot,* 5 Rich. Eq., 356, shows that a deed conveying land to A. for life, and after her death to her right heirs, their heirs and assigns forever, does not create 'right heirs' (the same as heirs general) into a new stock of inheritance, so as to prevent the operation of the

rule in *Shelley's case*. In *Kennedy v. Colclough,* 67 S. C.
[118], 122, 45 S. E., 139, the court held that the rule in
*Shelley's case* applied to a deed 'to A. for life, and after her
death to her heirs at law forever.' In *Davenport v. Eskew,*
69 S. C., 292, 48 S. E., 223, 104 Am. St. Rep., 798, the
Court held that, after grant to A. for life, superadded words
'then to be distributed equally between her remaining (sur-
viving) heirs' do not prevent the application of the rule in
*Shelley's case.* These cases illustrate the effect of superadded
words when the limitation is to heirs general. Logically the
same rule should apply when the limitation is to 'heirs of the
body' or 'lineal heirs'." See, also, *Antley v. Antley, supra.*

The Court, in *Clark v. Neves, supra,* had under con-
sideration the same superadded words as appear in
the granting clause here. Under the holding there,
and the cases cited and quoted from in that opinion, we must
conclude that these superadded words fail to take the limi-
tation out of the rule in *Shelley's case,* and that the granting
clause carries a fee conditional to the first taker.

The case of *Hewitt v. Hewitt,* 187 S. C., 86, 196 S.
S. E., 541, 542, answers appellant's contention with
reference to the effect of the superadded words
in the habendum clause here. That clause in the *Hewitt
case* reads: "Unto the said Claudie Eliza Sims for and
during the term of her natural life and at her death to the
heirs of her body and to their heirs and assigns forever."
Mrs. L. A. Sims is the grantor in the deed there as well as
in the deed in the present case. It is seen that she uses the
same superadded words in the habendum clause in both
deeds. Mr. Justice Bonham, who wrote the opinion in that
case, says: "An interesting inquiry is suggested; whether
the superadded words, in the habendum clause serve to take
the estate conveyed out of the rule in *Shelley's case* and
whether they are controlling as indicative of the intention of
the grantor to convey the estate after the falling in of the
life estate to the children of Claudie Eliza Sims in fee sim-
ple. It is not proper, however, to pursue that question further

since the intention of the grantor, or testator, will not be allowed to prevail if it runs counter to any established rule of law. In this case, the grantor has used in the granting clause apt words which convey a fee conditional to Claudie Eliza Sims. The superadded words in the habendum clause, if they are allowed to change the estate given to Claudie Eliza Sims, would run counter to the rule of law that where an estate is granted it may not be cut down by a subsequent provision of the same instrument. Hence, the intention in this case may not prevail to cut down the fee-conditional estate given to Claudie Eliza Sims."

We have read each of the cases relied upon by counsel for appellant but find that the facts of those cases differentiate them from the case at bar. In the deed under construction in the case of *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40, 180 S. E., 562, 566, "the words 'child or children' appear seven times, and the word 'issue' only once," and the Court concluded that the "word 'issue' was of purely secondary importance in the mind of the grantor, and that 'child and children' were paramount." In *Clark v. Neves, supra,* we find the following: "The cases of *Myers v. Anderson,* 1 Strob. Eq., 344, 47 Am. Dec., 537; *McLure v. Young,* 3 Rich. Eq., 559; *McIntyre v. McIntyre,* 16 S. C., 290; *Boykin v. Ancrum,* 28 S. C. [486], 493, 6 S. E. [305], 306, 13 Am. St. Rep., 698, and *Simms v. Buist,* 52 S. C., 554, 30 S. E., 400 * * * all related to the construction of wills as to which more liberal rules prevail, because in wills no words of inheritance are necessary to carry the fee, and a limitation may be ingrafted upon a fee conditional by way of executory devise, if not too remote." See also the discussion of the case of *McLure v. Young, supra,* in *Danner v. Trescot,* 5 Rich. Eq., 356, 361.

Under the rules of law governing, and from a careful consideration of the preamble and the granting and habendum clauses together, we are of opinion that the grantor disclosed no intention that the words "heirs of the body"

should have the meaning of "children." Appellant's second and third exceptions must, therefore, be overruled.

The first exception is as follows: "The Court erred in holding 'The burden of proof is upon him who alleges a meaning other than that imported by the legal signification of the words used' and in not holding that, this being an action for the construction of a written deed, the intention of the grantor is a matter of law to be ascertained by an examination and construction of the language contained within the four corners of the instrument, the error being that in so holding, the intention of the grantor is made to depend on testimony dehors the instrument, of a preponderant weight, on behalf of this appellant, that the grantor used the words 'heirs of their body' in the sense of 'children' or 'a definite line of succession'."

In *Antley v. Antley, supra,* we find: "Intention is a ██ term of art, signifying the meaning of the writing. *Sandford v. Sandford,* 106 S. C. [304], 306, 91 S. E., 294. Intention does not mean the purpose of the grantor apart from the writing. As has been said, the intention of the grantor must be found within the 'four corners' of the deed." "The word evidence, in legal acceptation, includes all the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. This term, and the word proof, are often used indifferently, as synonymous with each other; but the latter is applied by most accurate logicians to the effect of evidence, and not to the medium by which truth is established." 1 Greenleaf on Evidence 1. It is pointed out in Jones on Evidence (Second Edition, Section 176) that the phrase "burden of proof" is used "to indicate the duty of bringing forward argument or evidence in support of a proposition at the beginning or later."

The Master concluded as a matter of law that the ██ words used by the grantor carried to the grantees named a fee-conditional estate. Appellant excepted to his holding, contending that the grantor intended the

words used to have the meaning of "children of a limited degree." We think that the Circuit Judge meant, by the expression complained of, that appellant, having challenged the Master's recommendation, must bring forward argument—reasoning expressed in words—in support of his contention, but that such argument must be based on the wording of the deed itself as a whole and not upon proof outside of that instrument. This exception cannot be sustained.

The circuit decree is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.