8925

CRAWFORD v. MASTERS.

(82 S. E. 973.)

LIMITATION OF ESTATES. STATUTES. RIGHTS OF SUCCESSION.

The Act of 1906, vol. I, Code of Laws 1912, sec. 3562, making an illegitimate child the heir of its mother, rendered the giving birth at a prior date to an illegitimate child, who was still living in 1914 when the mother, a tenant in fee conditional, made and tendered her deed to her vendee, a good performance of the condition on which the mother held title, and enables her to convey the land in fee simple to her vendee.

Before PRINCE, J., Anderson, May, 1914.   Affirmed.

Action by Lula P. Crawford against John N. Masters for specific performance of contract for sale of land.   From a decree in favor of plaintiff, the defendant appeals on the following exceptions:

1st. Because his Honor, the Circuit Judge, erred in holding that the plaintiff was entitled to a decree of specific performance, when he should have held that the plaintiff did not have such a title that she could convey the land in fee simple.

2d. Because his Honor, the Circuit Judge, erred in holding that the birth of illegitimate issue and the passage by the legislature of the act of 1906 (section 3562, Civil Code

1912), subsequent to the execution of the deed from H. K. Crawford to Lula Crawford, was such a performance of the condition of said deed as enabled the said Lula P. Crawford to convey the land in fee simple and thereby bar the rights of the issue and cut off the reverter of the grantor.

3d. Because his Honor, the Circuit Judge, erred in holding that the legislature had the right by the act of 1906 (section 3562, Civil Code 1912), to change or divest the right of reverter of the grantor, H. K. Crawford, when he should have held that the said act of the legislature, having been passed since the execution of the deed by H. K. Crawford to Lula P. Crawford, to construe the said act as applying to this case would impair the obligation of a contract, to wit: the said deed from the said H. K. Crawford to Lula P. Crawford.

4th. Because his Honor, the Circuit Judge, erred in refusing to hold that the legislature had no power under the Constitution to divest or change the right of reverter of the grantor, H. K. Crawford, under the deed executed by him to Lula P. Crawford.

5th. Because his Honor, the Circuit Judge, erred in refusing to hold that the act of 1906 (section 3562, Civil Code 1912), has no application to this case because: (a) The act does not apply unless the mother dies intestate. (b) The act does not apply to fee conditionals. (c) If the illegitimate child, Lucile Crawford, should die before her mother, Lula P. Crawford, the act could not apply, and, therefore, the condition of the deed would not be performed.

The facts are stated in the opinion.

*Mr. A. H. Dagnall,* for appellant, submits: *Statute conferring rights on illegitimate children should be strictly construed:* 78 Miss. 209; 84 Am. St. Rep. 624; 183 Ill. 486; 75 Am. St. Rep. 124. *To construe it as affecting contracts made before its passage would impair the obligation of the*

*contract, and divest vested rights:* 96 U. S. 595; 24 L. Ed. 793; 6 Cr. 87; 3 L. Ed. 162; 11 Am. Dec. 90.

*Messrs. Quattlebaum & Cochran,* for respondent, cite: *As to nature of fees conditional:* Harp. L. 92; 5 Rich. Eq. 441; 17 S. C. 545; 28 S. C. 238; 47 S. C. 294; 90 S. C. 474; 91 S. C. 487; 1 Hill Ch. 276; 53 S. C. 197; Bailey Eq. 226. *Right of reverter a mere possibility, and not property:* 81 S. C. 284, 285; 31 S. C. 13, 37; 1 Hill Ch. 285; 2 Hill Ch. 244. *The law defines heirs:* 76 Pa. St. 81; 18 Am. Rep. 428. *Interest cannot pass by devise:* Harp. L. 92; 5 Rich. Eq. 441. *Performance of condition:* 91 S. C. 494. *Statute to be construed according to legislative intent:* 134 U. S. 624; 33 L. Ed. 1083. *Intent to ameliorate the harsh rule of the common law against illegitimates:* 2 Kent Com. 209; 84 Ala. 284; 4 So. 675.

August 27, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

In 1889, H. K. Crawford conveyed a tract of land to his daughter, Lula P. Crawford, *habendum* "unto the said Miss Lula J. Crawford and to her bodily heirs and assigns forever and to no others." In 1906, the legislature enacted (Civil Code 1912, sec. 3562) that "any illegitimate child or children, whose mother shall die intestate, possessed of any real or personal property, shall be, so far as said property is concerned, an heir or heirs at law as to such property, notwithstanding any law or usage to the contrary." In 1899, Lula P. Crawford gave birth to an illegitimate child, Lucile Crawford, who is still living. In 1914, plaintiff contracted with defendant to sell him the land and make him good title thereto in fee simple. Defendant refused to accept her title and comply with his contract, on the ground that she could not make a good title, and this action was brought to determine whether, under the statute above quoted, the birth of

an illegitimate child enabled her to make a fee simple title to the land.

Plaintiff's title is a fee conditional. At common law, the tenant in fee conditional may, on the birth of lawful issue, convey the land in fee simple. *Jones* v. *Postell,* 16 S. C. L. (Harp. L.) 92; *Wright* v. *Herron,* 26 S. C. Eq. (5 Rich. Eq.) 441; *Burnett* v. *Burnett,* 17 S. C. 545; *Archer* v. *Ellison,* 28 S. C. 238, 5 S. E. 517; *Miller* v. *Graham,* 47 S. C. 294, 25 S. E. 165; *Timber Co.* v. *Holden,* 90 S. C. 474, 73 S. E. 470; *Holley* v. *Still,* 91 S. C. 487, 74 S. E. 1065. If the statute makes plaintiff's child her heir, so that the child would take the land under the deed on the death of her mother, the condition of the deed has been performed, and plaintiff can make a fee simple title to the land. By its terms, the statute makes an illegitimate whose mother shall die intestate, possessed of any property, an heir at law as to such property. As to this property, the mother is bound to die intestate, for it is not subject to devise. *Jones* v. *Postell,* 16 S. C. L. (Harp. L.) 92; *Wright* v. *Herron,* 26 S. C. Eq. (5 Rich. Eq.) 441. Therefore, if plaintiff should die now, Lucile would take as her heir under the statute. That being so, the title tendered to defendant is good.

The statute was intended to ameliorate the rigorous policy of the common law with respect to the rights of bastards, which, in modern times, has been thought to visit the sins of the fathers too harshly upon their innocent offspring. It is therefore remedial in its nature, and should be construed liberally.

There is no force in the contention that this construction makes the statute retroactive. Nor is it obnoxious to any settled principle of law, in that it gives an effect to the deed of H. K. Crawford, different from that which it would have had, if the statute had not been enacted. While it is true that the laws existing at the time and place of making contracts enter into and form part of them, so that it will be presumed that the parties contracted with reference to them,

it is also true that contracts are made in contemplation of the fact that the policy of the State relative to any matter is subject to change, and that parties to contracts have no vested right in an existing policy.

The principle is illustrated and the point decided in the case of *Deas* v. *Horry,* 11 S. C. Eq. (2 Hill Ch.) 244. There a fee conditional was created by devise prior to the act abolishing the right of primogeniture. A reverter occurred, for failure of issue, after the passage of the act. It was, nevertheless, held that the reversion went, not to the eldest son of testator, as would have been the case under the law existing at the date of the creation of the estate, but to his heirs general, according to the law as it existed at date of the reverter. The Court said: "It was argued that on the death of Elias Horry, the right of reverter descended on his son, Elias Lynch Horry, and it seemed to be thought that this right could not be divested by the act of legislature. But why not? It belongs to the legislature to direct the course of descent, and declare who shall be heir. It is true that the right of reverter descended on Elias Lynch Horry in this sense, that if the fee conditional had determined at any time after the death of his father, and before the act of 1791, he would have been the person then entitled to the benefit of it. But that right he could not have transmitted to his heirs, if the act of 1791 had never been passed. Such a right, according to the views before expressed, is not regarded as property, it is a mere possibility, analogous in some degree to an heir apparent's right of succession."

In *McGunningle* v. *McKee,* 77 Penn. St. 81, 18 Am. Rep. 428, the Court gave a statute legitimating a bastard the same contruction and effect that has been given the statute in this case. Testator gave lands to "my son T. and his heirs, provided that, if my son T. should die without an heir," then the lands were to be divided between another son and his children. After testator's death, an illegitimate daughter of T. was, by act of the legislature, made his law-

ful heir. T. died leaving no other child. *Held*, that the legitimated bastard took under the will as heir of T. The Court said: "It is urged, however, that this is not the kind of child or heir that James McKee had in his mind at the time he executed his will. That he intended one born in lawful wedlock. We answer, he did not so declare in his will. He used the technical word 'heir.' He did not attempt to indicate what facts in his opinion constituted an heir. He made his will under the law, and left it to the law to determine whether Thomas died without an heir. He must be presumed to have known the legislative power to declare who should be an heir. He, therefore, intended to subject the property devised to legislative discretion to enact, within constitutional limits, whether Thomas had issue capable of inheriting. The law of every country regulates the succession of estates on the death of its citizens."

Judgment affirmed.